[No. S001618. July 31, 1989.]

ROBERT D. ZUMWALT, as County Clerk, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY et al.,
Respondents;
WILLIAM N. PIERCE, as Executive Officer, etc., Real Party in
Interest.

COUNSEL

Alan J. Fulkerson for Petitioner.

Adrian Kuyper, County Counsel (Orange), Richard D. Oviedo, Deputy County Counsel, Patrick J. Borchers and Downey, Brand, Seymour & Rohwer as Amici Curiae on behalf of Petitioner.

Kenneth Andreen, Blumberg, Kerkorian, Andreen, Seng & Ikeda, Lloyd M. Harmon, Jr., County Counsel, Anthony Albers and Daniel J. Wallace, Chief Deputy County Counsel, and Stephen R. Magruder, Deputy County Counsel, for Respondents and Real Party in Interest.

Charles D. Field, Margaret F. Tanaka, Best, Best & Krieger and Deborah Kanter as Amici Curiae on behalf of Respondent.

Alan Carlson, James H. Harmon and Byrd, Sturdevant, Harmon & Pace as Amici Curiae on behalf of Respondents and Real Party in Interest.

OPINION

EAGLESON, J.—Article VI, section 4, of the California Constitution provides, inter alia: "The county clerk is ex officio clerk of the superior court in the county."

We are asked by the County Clerk of San Diego County to review the decision of the Court of Appeal denying his petition for writ of mandate. By that petition he sought to restrain the County of San Diego from transferring certain court-related duties and the civil service employees who perform them from his control to that of a superior court executive officer, and to compel the superior court to rescind a local superior court rule that directs transfer of both the employees and their court-related duties from petitioner's control to that of the court executive officer.

The superior court rule in issue had been adopted, pursuant to Government Code section 69898,[1] on May 6, 1987, to become effective July 1, 1987, the date upon which the petition was filed. Mandate was sought on grounds that section 69898 conflicted with article VI, section 4 of the California Constitution, and adoption of the local rule was, therefore, an abuse of judicial discretion which interfered with the clerk's constitutional duties.[2]

[1] All statutory references herein are to the Government Code unless otherwise indicated.

Section 69898: "(a) Any superior court may appoint an executive officer who shall hold office at the pleasure of the court and shall exercise such administrative powers and perform such other duties as may be required of him by the court. The court shall fix the qualifications of the executive officer and may delegate to him any administrative powers and duties required to be exercised by the court. He shall supervise the secretaries of the judges of the court and perform, or supervise the performance of, the duties of jury commissioner. . . .

"Any superior court may appoint the county clerk as executive officer, who shall hold office as such executive officer at the pleasure of the court and shall exercise such administrative powers and perform such other duties as may be required of such person by the court.

"(b) Any superior court for which a specific authorization to have an executive or administrative officer has been enacted by the Legislature may elect to proceed under its specific authorization or under this section, but not under both.

"(c) In every superior court having an executive or administrative officer appointed under the provisions of this section or under a specific statutory authorization, that officer has the authority of a clerk of the superior court.

"(d) Notwithstanding any other provision of law, a superior court having an executive or administrative officer may, by local rule, specify which of the powers, duties and responsibilities required or permitted to be exercised or performed by the county clerk in connection with judicial actions, proceedings and records shall be exercised or performed by the executive or administrative officer. The county clerk shall be relieved of any obligation imposed on him by law with respect to these specified powers, duties and responsibilities, to the extent the local rule imposes on the executive or administrative officer the same powers, duties and responsibilities."

[2] The challenged rule designated 15 classes of employees performing court-related duties whose positions would be transferred. The number of employees affected was alleged to be 121. Pursuant to direction by the Court of Appeal, a revised rule adopted October 14, 1987, became the basis for the petition and decision.

The revised rule directs: "Pursuant to the authority contained in Government Code section 69898, the Court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, the powers, duties and responsibilities of the County Clerk with respect to the employment and supervision of the following posi-

After the Court of Appeal had first summarily denied the petition, this court granted review, and transferred the matter back to the Court of Appeal with directions to issue an alternative writ. Having done so, the Court of Appeal again denied the petition.

The Court of Appeal rejected petitioner's constitutional claim, holding that article VI, section 4 of the state Constitution empowered the Legislature to specify the duties to be performed either by the county clerk or by an officer or employee of the superior court. Having concluded that the powers and duties of the county clerk, as such, and in his role as ex officio clerk of the superior court, have always been a matter entrusted to the Legislature by our Constitution, we agree that both the statute and the superior court rule are valid, and affirm the judgment of the Court of Appeal.[3]

## CONSTITUTIONAL AND STATUTORY HISTORY

The office of county clerk was first created by the Constitution of 1849, which provided in article VI, section 7: "The Legislature shall provide for the election, by the people, of a Clerk of the Supreme Court, and County Clerks, District Attorneys, Sheriffs, Coroners, and other necessary officers; and shall fix by law their duties and compensation. County Clerks shall be, *ex officio,* Clerks of the District Courts in and for their respective counties." Although the provision did not state that the ex officio duties of the office were to be established by the Legislature, it expressly stated that the duties of the clerk of the Supreme Court and county clerk were to be matters under legislative control.[4]

tions and classifications whose principal activities are to serve the courts in connection with judicial actions and proceedings.

"The court pursuant to this local rule hereby specifies the following powers, duties and responsibility for such transfer:

"	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.

"Pursuant to the authority contained in Government Code section 69898, subsection [*sic*] (d), the County Clerk is relieved of any obligation imposed on the County Clerk by law with respect to the foregoing powers, duties and responsibilities, to the extent this rule imposes on the Executive Officer of the Superior Court the same powers, duties and responsibilities." (San Diego Super. Ct. Rules, div. II, rule 1.4(r).)

Petitioner's challenge to the transfer of employees is incidental to, and dependent on, his claim that the transfer of their duties is constitutionally impermissible. The employees are not parties to this action, and no question is presented as to the source of the court's power to modify the nature of their employment relationship with the County of San Diego. (Cf. *Service Employees Internat. Union* v. *Superior Court* (1984) 161 Cal.App.3d 1005 [208 Cal.Rptr. 48].)

[3] The constitutionality of section 69898 has also been upheld in *Price* v. *Superior Court* (1986) 186 Cal.App.3d 156 [230 Cal.Rptr. 442]; *Service Employees Internat. Union* v. *Superior Court, supra,* 161 Cal.App.3d 1005; and *St. John* v. *Superior Court* (1978) 87 Cal.App.3d 30 [150 Cal.Rptr. 697].

[4] The district courts served more than one county, and were therefore mentioned separately. Nothing in this or any other provision of the 1849 Constitution suggests that any different

In an 1862 constitutional amendment, the provision creating the various offices of clerk became section 11 of article VI, which then read: "The Legislature shall provide for the election of a clerk of the supreme court, county clerks, district attorneys, sheriffs, and other necessary officers, and shall fix by law their duties and compensation. County clerks shall be ex officio clerks of the courts of record in and for their respective counties . . . ." When this provision was adopted the Legislature had already responded to the command of former section 7 of article VI by enacting legislation establishing the duties of the county clerks. The duties thus established included those performed by the county clerks as ex officio clerks of the district courts.

The first statute enacted pursuant to the power to establish the duties of the clerk was an act to define the duties of county clerk, passed April 18, 1850. (Stats. 1850, ch. 110, p. 261.) In addition to provisions requiring the clerk to "take charge of and safely keep or dispose of according to law all books, papers, and records, which may be filed or deposited in his office" (*id.*, § 7, p. 262), a provision applicable to either county clerks or clerks of court required that "[h]e shall issue all writs and processes required to be issued from any Court of which he is a clerk; . . . enter, under the directions of the court, all orders, judgments, and decrees proper to be entered; and shall keep in each of said Courts a docket in which shall be entered the title of each cause, with the date of its commencement, a memorandum of every subsequent proceeding in said cause, with the date thereof, and a list of all the fees charged in the cause, and shall keep such other books of record as may be required by law or by the rules of the Court." (*Id.*, § 8, p. 262.)

In 1851, the Legislature imposed additional duties on the clerks, providing, inter alia, that "The Clerk of each Court shall keep the seal thereof." (Stats. 1851, ch. 1, § 128, p. 29.) In 1863, the Legislature added the duty to maintain additional records: "Every County Clerk shall keep in separate volumes an index of all suits which may hereafter be commenced in the District Court in and for his county, labeled 'General Index—Plaintiffs,' each page of which shall be divided into seven columns . . . ." (Stats. 1863, ch. 200, § 1, p. 260.)

 Contemporary construction of the constitutional provision establishing the ex officio duties of office of county clerk thus demonstrates that the grant of power to the Legislature to establish the duties of the county clerk included the power to establish the duties to be performed by the clerk

---

duties were contemplated for clerks of the district courts than for those of other courts, or that any powers or duties of constitutional origin were inherent in the ex officio role of the county clerk as district court clerk where none was inherent in the office of Supreme Court clerk or that of county clerk itself.

as ex officio clerk, initially of the district court and later of the courts of record in their counties.

The duties of the county clerk, including those ex officio duties as clerk of the courts of record, were incorporated into the Political Code on its adoption in 1872. Section 4204 of the Political Code continued the duty to issue process; enter orders, judgment and decrees; keep a docket; and keep the plaintiff/defendant index. Section 4205 of the Political Code required that the clerk keep "such other records and perform such other duties as are prescribed by law." Some of those "other duties" were created by provisions of the Civil,[5] Penal,[6] and Civil Procedure Codes adopted in the same year.[7] Thus, at the time the present Constitution, the Constitution of 1879, was adopted, the only duties of the county clerk, as such or in his ex officio capacity as clerk of the courts of record, were statutory duties. The office had no inherent, constitutionally vested or conferred powers or duties.[8]

The 1879 Constitution, without debate thereon by the delegates and drafters, readopted in section 14, of article VI the language of the 1849 Constitution giving the Legislature the power to prescribe the duties of the Supreme Court Clerk, and providing that the "County Clerks shall be ex officio Clerks of the Courts of Record in and for their respective counties, or cities and counties." The power of the Legislature to prescribe the duties of county clerks was moved to article XI. Section 5 of article XI then stated: "The Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of Boards of Supervisors,

---

[5] E.g., Civil Code section 69, as originally enacted, authorized the clerk to "examine parties and witnesses on oath, and receive and read affidavits" to verify entitlement to marriage licenses; section 1181, empowered the clerk to take proof or acknowledgement of instruments.

[6] E.g., Penal Code section 1047, as enacted in 1872: "The Clerk must prepare a calendar of all criminal actions pending in the Court, enumerating them according to the date of the filing of the indictment, specifying opposite the title of each action whether it is for a felony or a misdemeanor, and whether the defendant is in custody or on bail."; section 1207: "When judgment upon a conviction is rendered, the Clerk must enter the same upon the minutes . . . ."; section 1246: "Upon the appeal being taken, the Clerk with whom the notice of appeal is filed must . . . transmit to the Clerk of the Appellate Court a copy of the notice of appeal . . . ."

[7] At the time of its enactment in 1872, 75 provisions of the Code of Civil Procedure prescribed court-related duties of the county clerk. Section 262 of the Code of Civil Procedure then provided also: "The modes of election, powers and duties of the attorney general, clerk of the supreme court, reporter of the supreme court, clerks, sheriffs, and coroners, are prescribed in the Political and Penal Codes."

[8] Two decisions of this court had referred to the duties of the clerk, the first (*Houston v. Williams* (1859) 13 Cal. 24, 28) suggesting that the court could not trench on the clerk's power. The power in issue, however, was one created by the Legislature pursuant to its constitutional power to specify the duties of the clerk; so also was the duty to keep the seals of the courts to which the court referred in the second case. (*Touchard v. Crown* (1862) 20 Cal. 150, 157-158.)

Sheriffs, County Clerks, District Attorneys, and such other county, township, and municipal officers as public convenience may require, and shall prescribe their duties and fix their terms of office. . . ."[9]

This court recognized under both the 1849 Constitution and the 1879 Constitution that the Legislature was the sole source of the clerk's power. "The rule as settled by the decisions in this state, with respect to [entry of] such judgment, is that the clerk in entering them acts in a ministerial capacity only, and that he must follow closely the forms provided by law for the exercise of the power conferred on him. In *Crane* v. *Hirshfelder,* 17 Cal. 585, in considering this section, the court says: 'The clerk has no general jurisdiction or power to render, or of his own motion, and as his act, to enter judgments; and when in a few exceptional cases the statute confers a power of this sort, as he looks to the statute for the source of his authority so he must pursue, at least substantially, the directions of the statute, in order to impart validity to his acts.' " (*Old Settler Investment Co.* v. *White* (1910) 158 Cal. 236, 245 [110 P. 922].)

Earlier, in *Providence Tool Company* v. *Prader* (1867) 32 Cal. 634, 636, discussing entry of a default judgment, we also recognized that "[t]he Clerk derives all his powers from the statute, . . ." (See also, *Bond* v. *Pacheco* (1866) 30 Cal. 530, 534-535, and cases cited.)

In the 1966 revision of the Constitution, the provision establishing the superior court and naming the county clerk as ex officio clerk of that court was placed in section 4 of article VI. This new section also directed the Legislature to provide for officers and employees of the court, and now reads: "In each county there is a superior court of one or more judges. The Legislature shall prescribe the number of judges and provide for the officers and employees of each superior court. If the governing body of each affected county concurs, the Legislature may provide that one or more judges serve more than one superior court.

---

[9]That no diminution of the plenary power of the Legislature over the duties of county clerks, including their ex officio duties, was contemplated is suggested by the "Address to the People of the State" adopted by the delegates to the 1878-1879 Constitutional Convention following their adoption of the proposed new Constitution. The purpose of the address was to "set forth the salient points of difference between the existing Constitution and the Constitution which we have adopted." (3 Debates & Proceedings of the Constitutional Convention (1881) p. 1521.)

In a paragraph on the judicial department, the address notes that the superior court was to take the place of the district, county, and probate courts, but made no mention of the clerk of the court. The paragraph on city, county, and township organization stated: "In this article a new system of local self-government has been established. . . . The Legislature is directed to establish a system of county governments which shall be uniform throughout the State, . . . ." No mention is made of the county clerk or other offices. The omission supports our conclusion that the drafters did not intend to change the breadth of the Legislature's power over the duties of the county clerk.

"The county clerk is ex officio clerk of the superior court in the county."

Although now found in section 4 of article VI, and specifically limited to the superior court, there has been no change in the language establishing the county clerk as ex officio clerk of the superior court. Section 4, of article VI, like each of its predecessors says only that the "county clerk is ex officio clerk of the superior court in the county."[10]

## THE SAN DIEGO SUPERIOR COURT RULE

The local rule in issue here transferred to the court's executive officer "the powers, duties, and responsibilities of positions referenced as" superior court clerk, as well as those of the supervising and assistant supervising superior court clerk, chief calendar clerk, interpreter clerk, storekeeper, stock clerk, mail clerk driver, court services clerk, accounting technician, and senior account clerk. The rule described the duties of these positions which include generic administrative functions related to training and supervision of personnel, clerical and accounting functions, preparation of statistical data, ordering and storing equipment and supplies, that are common to most agencies of government. More pertinently, however, duties specific to a courtroom clerk are transferred.

The description of the transferred duties of the superior court clerk position recites: "To perform legal clerical work for the judges of the court; to be responsible for proper documentation of proceedings; attend sessions of the court; prepare minutes, minute orders and judgments as needed by the court; file papers as ordered by the court after presentation in the courtroom or in chambers; administer oaths to witnesses, impanel juries; assist the public; prepare documents required by the court; prepare regular and special reports; maintain jury attendance records; prepare reports required by the Judicial Council; examine documents for conformance, adequacy and form; act as lead worker over legal clericals in a unit or other clerks in courtrooms."

---

[10] Article XI has been amended, however. A 1970 revision removed reference to the county clerk, the sheriff, and the district attorney as county officers. The latter offices were restored by amendment of sections 1, subdivision (b) and 4, subdivision (c) of article XI at the June 6, 1978, Primary Election (sheriff), and the November 4, 1986, General Election (district attorney). The office of county clerk, however, is now mentioned only in section 4 of article VI.

Respondent court and real party argue that as a result of the 1970 amendment the office of county clerk itself is no longer one of constitutional stature. They contend that since the office of county clerk is now a statutory office, there can be no duties or powers of constitutional origin whether ex officio in nature or otherwise inherent in the office.

In light of our conclusion that the duties of the office are solely statutory, we need not resolve this claim.

## DISCUSSION

The Court of Appeal concluded that the rule transferring these duties from the county clerk to the executive officer of the court, and the enabling legislation, section 69898, were valid, holding that article VI, section 4, now permits the Legislature to enact powers and duties to be performed either by the county clerk or an employee of the court. In so doing, the Court of Appeal rejected arguments by petitioner that article VI, section 4, read in conjunction with the mandate of article I, section 26, stating that the provisions of the Constitution are "mandatory and prohibitory" precludes anyone other than the county clerk from performing the duties of superior court clerk.

The Court of Appeal relied primarily on the history of the 1966 constitutional revision which added to section 4 of article VI the legislative power to provide for officers and employees of the superior court. The Court of Appeal noted that the 1966 revision of the Constitution followed the appointment in 1963 of a Constitution Revision Commission which had proposed that the ex officio position of the county clerk as clerk of the superior court be removed entirely and placed in a statute. The Assembly Committee on Constitutional Amendments did not follow that recommendation. Instead it added to the section on the superior court the mandate that the Legislature provide for officers and employees of the superior court. This, the Court of Appeal reasoned, reflected an intent that the Legislature be free to place duties and powers necessary to the operation of the superior court in either a court employee or the county clerk.

The Court of Appeal found further support for this conclusion in the history of the office which confirmed that the duties of the county clerk as superior court clerk had never been set forth in the Constitution, but had been created by legislation. In the words of the Court of Appeal: "What the Legislature has given, the Legislature can take away."

■ Petitioner disputes the conclusion of the Court of Appeal that the 1966 constitutional amendment was intended to permit officers other than the county clerk to perform the duties of superior court clerk. He does not question the power of the Legislature to assign the vast majority of those duties to others, however, including many duties that are essential to the operation of the courts. Instead, without identifying any historical basis for attaching constitutional significance to those duties he claims may not be transferred, he doggedly maintains, as he did below, that "core" duties may not be taken from the county clerk without offending the Constitution. These duties, he asserts, are those necessary to the existence of a court of record and include at a minimum receiving all filings; indexing the court

files; maintaining the records of the court; attending all court sessions and making a record of the proceedings in the court minutes; and keeping the seal of the court. No authority is offered, however, for the proposition that the duties petitioner identifies are ones that may be performed only by a superior court clerk. Only if the duties may be carried out only by a superior court clerk would article VI, section 4, arguably limit their performance to the county clerk as clerk of the superior court.

Whether entrusted expressly to the superior court clerk, or to the county clerk by the Legislature, however, all of the court-related functions for which the county clerk has been responsible have been specified in legislation. Keeping the seal of the court, for instance, was a duty created by statute in 1851. (Stats. 1851, ch. 1, § 128, p. 29.) Nothing in the Constitution required that the court have a seal,[11] and its statutory uses were quite limited. The 1853 "Act Concerning the Courts of Justice of this State, and Judicial Officers" stated that the seal was not required for any proceeding except summons or writ, proof of a will, appointment of executors, administrators, or guardians, and to authenticate records. (Stats. 1853, ch. 153, § 103, p. 304.) The clerk's statutory duty to keep the seal and the uses to which it was to be put were carried over into sections 151 and 152 of the Code of Civil Procedure when it was adopted in 1872. ■ But since the existence of the seal, the officer to whom it is entrusted, and the method of authenticating the record were and are statutory,[12] nothing in the California Constitution mandates that the superior court clerk or the county clerk as ex officio clerk of the court keep the seal and authenticate a judicial record if it is to receive full faith and credit in other jurisdictions.

One method of authenticating judgments entitled to full faith and credit by article IV, section 1, of the United States Constitution is itself statutory, but that statute is a federal statute and affords no support for petitioner's claim that by virtue of his constitutional office as county clerk, he alone must authenticate superior court records if they are to be accepted as such in other jurisdictions. The federal law provides: "The records and judicial proceedings of any court of any . . . State . . . or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. [¶] Such . . . records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories

---

[11] By contrast, when adopted the 1879 Constitution included provision for a state seal to be kept by the Governor and used on specified documents. (Art. V, §§ 13, 14.)

[12] See, e.g., Evidence Code sections 1530-1532; 28 United States Code section 1738.

and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." (28 U.S.C. § 1738.)

Therefore, since the Constitution provides that the county clerk is ex officio clerk of the court, and by statute he presently is to keep the court seal, an authentication by the county clerk, certified by the court, will satisfy the federal act. This recognition is granted by federal law, however, not out of any right or duty inherent in the constitutional office of county clerk, and this method of authentication is not exclusive. States are free to adopt a less stringent standard. (*Price* v. *Price* (1982) 4 Ohio.App.3d 217 [447 N.E.2d 769]; *Murphy* v. *Murphy* (Okla.Ct.App. 1978) 581 P.2d 489; *Medical Administrators* v. *Koger Properties* (Tex.Ct.App. 1983) 668 S.W.2d 719.)

Further, since subdivision (c) of section 69898 provides that a court executive or administrative officer appointed pursuant to the provisions of that section "has the authority of a clerk of the superior court," there is no reason to suppose that records authenticated by those officers, and certified by the court, would not be entitled to recognition under the federal statute.[13]

---

[13] Since the local rule in issue does not purport to affect the county clerk's obligation to keep the seal of the court, it may not contemplate any change in the manner in which records of the court will be authenticated. Real party denies petitioner's suggestion that all of the duties except those related to issuance of marriage licenses and passports have been transferred. He states that the duties transferred are principally those performed by courtroom clerks and persons performing calendar functions, their supervisors, and support personnel whose performance is directly related to the court's productivity. He lists among the duties not affected by the local rule that of certifying abstracts of judgment. Presumably, the county clerk continues to be the custodian of the court seal and has the power to authenticate judgments as well.

Real party states that of the five "core" duties which petitioner contends only the county clerk may perform, only that of attendance in court and preparation of minutes is affected by the transfer of duties mandated by the local rule. We have not limited our consideration to the power of the Legislature to permit transfer of that duty, however, because to do so would leave in doubt the validity of local rules adopted in several other counties. We have, at the request of respondents and real party, taken judicial notice of the rules adopted by the Superior Courts for the Counties of Fresno, Imperial, Lassen, Madera, Mendocino, Orange, Riverside, San Joaquin, and Santa Clara. Many of these counties have submitted amicus curiae briefs, as has the County of Solano which has also adopted a local rule transferring courtroom related duties to a court executive officer.

The rule adopted by the Riverside County Superior Court, tranferring all "administrative duties and responsibilities of the County Clerk with respect to the personnel whose principal activities are to serve the Courts in the capacity of a Superior Court Clerk" (Riverside County Super. Ct. Rules, rule 9.0050) has already been a subject of litigation which is now pending in this court. (*Conerly* v. *Superior Court* (Mar. 25, 1988) D006730, review granted June 9, 1988 (S005476).)

All of these amici curiae argue that the statute and the San Diego local court rule are valid. They also ask the court to consider the ability of the court to function with greater efficiency when an executive subject to the control of the court is responsible for the personnel who perform court-related duties. We are not unmindful of the concerns which led the Legislature to

Whether authentication of a judgment by an executive or administrative officer exercising the "authority of a clerk of the superior court" pursuant to the legislative grant of power in subdivision (c) of section 69898 would satisfy the command of 28 United States Code section 1738 that the attestation be made by the clerk of the court is not a question presented by this petition, however.

■ We find nothing in the constitutional and statutory history of this state that supports petitioner's argument that any of the four remaining duties he characterizes as "core" duties must be performed by an officer designated as a "superior court clerk" or by the county clerk. While we may agree, arguendo, that the proper performance of each of these duties is essential to the existence of a court of record, it does not follow that the existence of the court is dependent upon the identity or title of the officer who performs them. ■ That being so, the constitutional command that the county clerk be ex officio clerk of the superior court does not reflect an intent to confer on the county clerk the right to attend sessions of the court, handle its filings, or maintain indices and records. Rather, it appears, as is true with other duties assigned to the county clerk,[14] the designation of the county clerk as ex officio clerk of the superior court reflects nothing more than an effort by the drafters to ensure that the Legislature would be able to call upon the county clerk, as necessary, to perform court-related duties.

■ Therefore, while we agree with petitioner that article I, section 26,[15] commands obedience to all provisions of the Constitution, and prohibits disobedience (State *Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 460 [343 P.2d 8]), we do not agree with his view of the import of that command on section 4 of article VI. Article I, section 26, does not prohibit the Legislature from assigning court-related duties to officers and employees of the superior court other than the county clerk. ■ It commands only that the county clerk perform those duties that the Legislature identifies as duties to be performed by the superior court clerk. By mandating that the county clerk shall be ex officio the clerk of the superior court, section 4 of

---

enact section 69898, and the superior courts to implement it through adoption of local rules. The question posed by the petition for writ of mandate, however much petitioner himself argues the practical effect of the challenged rule on his office, is solely one of constitutional construction.

[14] See, e.g, sections 26801 and 26802, designating the county clerk as clerk of the board of supervisors and registrar of voters unless other provision has been made in the county for the performance of those duties.

When the 1879 Constitution was enacted, the Political Code gave boards of supervisors the power to impose ex officio duties of auditor and recorder on the county clerks of counties of the second and third class. (Former Pol. Code, §§ 4105 and 4106.)

[15] Article I, section 26: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

article VI places an obligation on the official who occupies the office of county clerk to do that which the Legislature commands. ▪▪▪ It does not identify, or create a right in that office holder to perform, any court-related function by virtue of his office alone.

We agree, therefore, with the conclusion of the Court of Appeal in *Price* v. *Superior Court, supra,* 186 Cal.App.3d 156, 162-163, that the designation of the county clerk as ex officio clerk of the superior court does not create a separate office whose incumbent may claim any right by virtue of his status as county clerk alone to perform court-related duties. ▪▪▪ The county clerk must perform any duties required by the Legislature to be performed by a superior court clerk. ▪▪▪ He may not, however, claim the right to perform any such duties which the Legislature has, by enactment of section 69898, permitted a superior court to transfer to an executive or administrative officer.[16]

The judgment of the Court of Appeal is affirmed. The parties are to bear their own costs.

Lucas, C. J., Panelli, J., Kaufman, J., and Kennard, J., concurred.

**KAUFMAN, J.**—I concur in the conclusion and reasoning of the opinion by Justice Eagleson. The constitutional and statutory history there set forth demonstrates that article VI, section 4, of the California Constitution confers no right upon the county clerk to perform any of the duties of superior court clerk assigned to another officer by statute, or by a superior court pursuant to statute.

That conclusion is reinforced by the fact that ever since the revision in 1970 of article XI, the article which deals with local government, the county clerk has not been specified as an officer for which the Legislature or the county's governing body must provide. (See art. XI, §§ 1, subd. (b), & 4, subd. (c).) Indeed, apart from the reference in article VI, section 4, to the county clerk as ex officio clerk of the superior court, I see no constitutional obstacle to the entire elimination of any county clerk from a county government. That reference in article VI, the article which pertains to the judicial branch, should not be read as implicitly augmenting the structure of county government prescribed in article XI by requiring the appointment or elec-

---

[16]To the extent that *Price* v. *Superior Court, supra,* 186 Cal.App.3d 156, suggests that some court-related duties must be left to the county clerk to avoid "destruction of the office," it is disapproved, as is *St. John* v. *Superior Court, supra,* 87 Cal.App.3d 30, which misconstrued section 69898 as authorizing transfer of those duties which were allocated by statute to the "county clerk," but not those which the statute specified were to be performed by the "clerk of the superior court."

tion of a county clerk in each county. Instead, the constitutional provisions are best harmonized by interpreting article VI, section 4, to mean that if there is a county clerk, and if there are duties pertaining to the superior court which are required by statute to be performed by the county clerk or by the clerk of the superior court, the county clerk must perform them to the extent, but only to the extent, that those duties are not assigned to another officer by a statute, or by a court pursuant to statute.

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment.

The majority correctly conclude that both Government Code section 69898[1] and the local rule do not offend the California Constitution; however, their view that the duties of the county clerk as clerk of the superior court are purely statutory, and thus subject entirely to the control of the Legislature, fails to respect the command of article VI, section 4, of the California Constitution (hereafter article VI, section 4). I therefore dissent from that portion of the opinion.

The majority seem more interested in the past than the present, more interested in language that has been deleted from the Constitution than language that remains. Article VI, section 4, now provides in pertinent part, "The county clerk is ex officio clerk of the superior court in the county." The majority purport to find support for their view in language from the 1849 Constitution.[2] That language, carried over to the present Constitution, was deleted in 1966. While it is often useful to examine the history of a constitutional provision, we must be mindful that the goal of such examination is to assist in interpreting the Constitution *as it now reads.* The majority correctly recognize that the issue "is solely one of constitutional construction" (maj. opn., *ante,* at p. 179, fn. 13), yet precious little attention is given to interpreting the two clauses of article VI, section 4. I believe the majority's reliance on constitutional and statutory history is misplaced, and that its view fails to give any significance to the supreme law of our state.

Article VI, section 4, necessarily prohibits the Legislature from depriving the county clerk of *all* his duties as superior court clerk. Article I, section 26, of the California Constitution admonishes that "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." This interpretive principle " 'not only commands that [constitutional] provisions shall be obeyed, but that disobedience of them is prohibited. Under the stress of this rule, it is the duty of this court to give effect to every clause and word of the constitution, and to take

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] "The Legislature shall provide for the election of County Clerks . . . , *and shall fix their duties.*" (Cal. Const. of 1849, art. VI, § 7, italics added.)

care that it shall not be frittered away by subtle or refined or ingenious speculation. The people use plain language in their organic law to express their intent in language which cannot be misunderstood, and we must hold that they meant what they said.' " (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 460 [343 P.2d 8], quoting *Oakland Paving Co.* v. *Hilton* (1886) 69 Cal. 479, 512 [11 P. 3].) In language beyond misapprehension, the Constitution announces that the county clerk, by virtue of his office, is clerk of the superior court.

The majority appear to adopt the Court of Appeal's determination that the constitutional designation of county clerk as clerk of the superior court serves merely as a default provision in the event the Legislature does not otherwise provide for court clerks. This interpretation rests on a tortured reading of the language of article VI, section 4. To accept the majority's conclusion that this language authorizes the Legislature to transfer all the duties performed by the county clerk in his capacity as clerk of the superior court, we must presume that the general provision of the first clause ("The Legislature shall prescribe the number of judges and provide for the officers and employees of each superior court.") controls the specific provision of the second clause ("The county clerk is ex officio clerk of the superior court in the county."). We are not permitted to do so. (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723].) Although article VI, section 4, authorizes the Legislature to provide generally for "the officers and employees" of superior courts, this prerogative cannot reach an office that has been specifically provided for in an alternative fashion in the same constitutional section.

Moreover, the majority's reading fails to harmonize the two clauses of article VI, section 4. To interpret the provision as urged by the majority is to reduce the second clause of article VI, section 4, to surplusage. Such a construction fails to comport with our obligation to "give significance to every word in the constitutional text." (*ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 867 [210 Cal.Rptr. 226, 693 P.2d 811].) To ensure that "the general and special provisions operate together, neither working the repeal of the other" (*People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d at p. 637), I would hold that the Legislature may not authorize a total reassignment of the court clerk's duties and thereby, in effect, destroy the office.

The majority place great emphasis on the Legislature's role over the years in establishing the duties and responsibilities of the court clerk. The Legislature has indeed assumed significant responsibility for delineating the court-related duties of the county clerk, and this tradition of legislative involve-ment *should bear significantly* on our understanding of the scope of the

duties that may not constitutionally be taken from the county clerk as clerk of the superior court. However, the historical authority of the Legislature to articulate the particular tasks of an office is not synonymous with the power to effectively eliminate the office altogether. As stated in *St. John* v. *Superior Court* (1978) 87 Cal.App.3d 30 [150 Cal.Rptr. 697], "Since . . . the Legislature is generally entrusted with the authority to prescribe the powers and duties of the office, those powers and duties may be increased or diminished, provided that, in the case of a constitutional office, a proper distinction is maintained between diminution of duties and destruction of the office." (*Id.* at p. 40.)

Legislative attempts to transfer the court-related duties of an elected county clerk to a court-appointed officer are not limited to this state or to this century. In 1843, the New York Legislature passed a law detaching the clerkship of the court of common pleas from the elected county clerk, and gave the appointment to three judges of that court. The appellate court struck down the law on the ground that it violated the state constitutional provision requiring that county clerks be elected. The court held, "By directing the mode of appointing particular officers, the framers of the constitution certainly did not intend to take from the legislature the power to regulate the duties of such officers, either by prescribing new duties to be performed, or directing the discontinuance of duties which the public interest no longer required to be performed by any one. . . . But when the legislature, as in this case, assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another who is to be appointed in a different manner and to hold the office by a different tenure than that which was provided for by the constitution, it is not a legitimate exercise of the right to regulate the duties or emoluments of the office . . . ." (*Warner* v. *The People* (1845 N.Y.) 2 Denio 272, 281.) Here, too, if the language of article VI, section 4, is to retain force and effect, the county clerk must serve as superior court clerk in more than name alone. Legislative authority over the scope of the county clerk's court-related duties remains subordinate to this fundamental constitutional constraint.

Indeed, a close reading of section 69898, guided by the strong presumption in favor of constitutionality (*People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 127 [294 P. 3]), leads to the conclusion that the Legislature did not intend to allow superior court judges to destroy the office of court clerk. Subdivision (d) of the statute permits a superior court to specify "which of the powers, duties and responsibilities required or permitted to be exercised" by the county clerk shall be exercised by the executive officer. The mandate is carefully limited. The statute reads "*which* of the powers" not "any" or "all" of the powers. "Required" must mean required by statutes, not by the Constitution, because only statutes define the duties and

specifically impose them on the clerk; the Constitution is silent on this point. Although the second sentence of subdivision (d) relieves the clerk of "any obligation imposed on him by law with respect to these specified powers, duties and responsibilities," the term "any obligation" is limited by the subsequent phrase, "these specified powers," which plainly refers to the duties permitted to be transferred by the first sentence. Because the first sentence permits only a limited, and not a total, transfer of the clerk's duties, the language of the second sentence is not constitutionally fatal.

Similarly, subdivision (c) of section 69898 presents no constitutional difficulty on its face. It provides that the executive officer "has the authority of a clerk of the superior court." When read in conjunction with subdivision (d), it is evident that this "authority" is not the *entire* authority of the court clerk; rather, it is only the authority to perform the particular tasks that the court assigns to the executive officer.

Like section 69898, the challenged local rule is carefully limited. In sharp contrast to the local rule held invalid in *St. John* v. *Superior Court, supra,* 87 Cal.App.3d 30, which purported to transfer all the powers, duties and responsibilities exercised by the county clerk in his capacity as clerk of the court, the rule enacted by the Superior Court of San Diego County does not affect many of the duties that petitioner performs in his capacity as clerk of that court. According to respondents, petitioner maintains supervision over, inter alia, the keeping of indexes of plaintiffs and defendants in civil actions and of defendants in criminal actions (§ 69842); the issuance of process, notices and summons (§ 69843; Code Civ. Proc., § 412.10); the keeping of minutes and court records and the entering of judgments (§ 69844); the microfilming of records (§ 69844.5); the keeping of a register of actions or its alternative (§§ 69845, 69845.5); the acceptance of papers for filing (§ 69846); the filing of briefs on appeal to the appellate department of a superior court (Cal. Rules of Court, rule 105(e)); the collection of fees for filing (§§ 26820-26863); the preparation and the issuance of writs of attachment (Code Civ. Proc., § 484.370; Gov. Code, § 26828); the preparation of the clerk's transcript on appeal (Cal. Rules of Court, rules 4.5, 5); the destruction of court records (§§ 69503, 69503.1); the certification of abstracts of judgment (Code Civ. Proc., § 674); the keeping of a judgment book or its equivalent (Code Civ. Proc., §§ 668, 668.5); the keeping of money deposited into court (Code Civ. Proc., § 573); acceptance for filing of confessions of judgment (Code Civ. Proc., § 1134); and entry of defaults (Code Civ. Proc., § 585, subd. (a)). Plainly, petitioner retains a substantial portion of his duties under the challenged local rule. His office is not destroyed and the constitutional mandate is not violated.

Moreover, the duties transferred by the local rule are those most intimately associated with the work of the judges. The effect of the local rule is

to transfer the personnel performing courtroom clerk and calendaring duties to the supervision of the executive officer. These personnel work most closely with superior court judges in the daily operation of the courts. The transfer of the court clerk's functions most intimately related to the operation of the trial court is consistent with the constitutional interest in judicial autonomy. Particularly relevant to this case is the dictum in *Houston* v. *Williams* (1859) 13 Cal. 24, 29, that the court "must necessarily exercise control [over court records] that justice may be done to litigants before it." As a coordinate branch of government, the courts are vested by the Constitution with an inherent "power of self-preservation . . . [and] the power to remove all obstructions to [their] successful and convenient operation." (*Millholen* v. *Riley* (1930) 211 Cal. 29, 33 [293 P. 69].) The exercise of this power, in the form of the limited transfer of duties under the local rule, is thus consistent with both the constitutional doctrine of inherent power and the mandate of article VI, section 4, that the county clerk is ex officio clerk of the superior court.

In sum, I have no quarrel with the majority's recognition of the Legislature's significant responsibility in shaping the duties of the court clerk. That responsibility must, however, be exercised within the limits of the Constitution. The majority's sweeping conclusion that validates not only the carefully limited local rule challenged here but also a rule that would destroy the office of court clerk by transferring all its duties rides roughshod over the Constitution. I therefore concur in the judgment only.

Broussard, J., concurred.